**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SUPPOSE U DRIVE, INC.,** | ) | CASE NO. 4:25CV41 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | JUDGE JOHN ADAMS |
| **UPG ENTERPRISES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | **ORDER AND OPINION** |
| | ) | |
| | ) | |

Pending before the Court is a motion for summary judgment filed by Plaintiff Suppose U Drive. Doc. 42. Defendant UPG Enterprises, LLC ("UPG") has opposed the motion, and Suppose U Drive has replied. Upon review, the motion is GRANTED.

## I. Facts

The underlying facts giving rise to this litigation are largely undisputed. On January 26, 2022, Aim Leasing Company entered into a Vehicle Service Lease and Addendum with Defendant UPG Enterprises. Aim's co-president executed the lease on behalf of his company, and UPG's vice president of logistics, Michael Wasko, executed the lease on his company's behalf. The lease was later assigned, in part, to Borrmann Metal Center, Inc. That assignment was executed on UPG's behalf again by Wasko and

acknowledged by Fleming for Aim. Aim subsequently assigned its interest in a provision of the vehicle lease agreement to Plaintiff Suppose U Drive, Inc. ("SUD"). Once again, Wasko executed the assignment for UPG, Fleming acknowledged the assignment for AIM, and SUD's president, Justin Johnston, executed it for his company.

Through the assignment, SUD leased 11 vehicles to Borrmann. Borrmann subsequently ceased operations in September 2024 and returned the vehicles to SUD. As a result of Borrmann shutting down, significant portions of the lease went unpaid. SUD brought this action against UPG alleging that UPG remained responsible for any fees or charges incurred by Borrmann under the lease and assignments. Based upon those assertions, SUD seeks damages on its breach of contract claims in the amount of $1,946,387.78.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,*

863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

**III. Analysis**

The parties do not dispute any of the underlying facts set forth above. Instead, the sole point of contention appears to be whether Wasko had the authority to execute the documents at issue and bind UPG to the obligations contained therein. In support of summary judgment, SUD argued that Wasko had actual authority, implied authority, and/or apparent authority to execute the documents at issue and bind UPG. In opposition, UPG offered no argument regarding implied or apparent authority, thereby forfeiting any future argument related to those theories. As it is dispositive of the motion, the Court first examines apparent authority.

The Restatement (Third) of Agency, section 2.03, defines "apparent authority" as "the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Stated differently, under the theory of apparent authority, a principal will incur liability for the acts of an "agent" if the principal "held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority." *Jones v. Federated Fin. Reserve Corp*., 144 F.3d 961, 965 (6th Cir.1998). Thus, "[t]he apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent ... [.]" *Brainard v. Am. Skandia Life Assurance Corp*.,

432 F.3d 655, 663 (6th Cir.2005) (quoting *Master Consol. Corp. v. BancOhio Nat'l Bank,* 61 Ohio St.3d 570, 575 N.E.2d 817, 822 (1991)).

The undisputed facts presented here demonstrate that Wasko had, at a minimum, apparent authority to bind UPG to the contracts at issue. Wasko was hired as the vice president of logistics at UPG and almost immediately inserted into ongoing negotiations about replenishing the fleet of vehicles for UPG's related entities, including Borrmann. Wasko then actively negotiated the contracts at issue. The Court cannot identify stronger evidence of UPG representing Wasko's authority to execute the contracts at issue than its decision to place Wasko at the head of the negotiating table on its behalf. Moreover, there is *no* evidence in the record that would undermine this conclusion. In fact, UPG's co-president, Paul Douglass, did not suggest in his deposition that Wasko could not negotiate these types of contracts on behalf of UPG. Instead, it is apparent from Douglass's deposition that UPG's position is that Wasko could negotiate the leases at issue, but he could not negotiate the specific provision that allowed for UPG to remain liable in the event of a default by Borrmann. However, there is nothing in the record that would demonstrate any act by UPG that would have alerted SUD to this limitation. For that matter, Wasko himself indicated that he was unaware *himself* that such a limitation existed. Accordingly, Douglass's buyer's remorse over the terms of the contract do not create a genuine issue of material fact related to apparent authority.

As the Court has concluded that there is no dispute of fact that Wasko had apparent authority to act on behalf of UPG, it follows that SUD has proven the primary elements of its breach of contract claims. UPG, however, contends that there remains an issue of fact on its affirmative defense that SUD failed to mitigate its damage. The Court disagrees.

The problem for UPG is that failure to mitigate damages is an affirmative defense. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 283 (6th Cir. 2018). UPG thus bears the burden of presenting evidence sufficient to demonstrate a genuine issue of material fact as to whether SUD's mitigation efforts were reasonable. *See Great Am. Ins. Co. v. E.L. Bailey & Co., Inc.*, 841 F.3d 439, 445 (6th Cir. 2016) ("[A]s an affirmative defense, [Defendants] bore the burden of pleading and substantiating the issue to place it in dispute." (quotation marks omitted)). The Sixth Circuit has gone on to note that "[t]o avoid summary judgment, [a defendant] needed to do more than suggest possible problems with [the plaintiff's] mitigation." *Franklin Am. Mortg. Co.*, 910 F.3d at 284.

Here, UPG's sole assertion is that SUD's failure to sell the leased vehicles following their return by Borrmann leaves a question of fact over the reasonableness of SUD's mitigation efforts. The Court finds no merit in this contention.

First, UPG offers no evidence that the sale of the vehicles was possible *and* would not *increase* the damages under the lease. In fact, the evidence before the Court indicates that SUD had good reason to not sell the vehicles because the transportation market was in such a state that the vehicles would be sold at a substantial loss to SUD. Moreover, evidence in the record demonstrates SUD's efforts to release the vehicles and mitigate damages flowing from the breach of the lease. As such, UPG has failed to present record evidence to place the issue of mitigation in dispute. Judgment in favor of SUD on each of its claims, therefore, is warranted by the law and record before the Court.

**IV. Conclusion**

For the reasons set forth herein, SUD's motion for summary judgment is GRANTED. Judgment will be entered in favor of SUD in the amount of $1,946,387.78 plus interest at the rate

of 18% per annum plus attorney fees. Within 14 days of this order, SUD may file a brief in support of the amount of attorney fees and costs it seeks. UPG shall file any opposition to that brief within 14 days of its filing. Any reply shall be filed within 7 days of the opposition.

IT IS SO ORDERED.

September 24, 2026 */s/ Judge John R. Adams*________

JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT